All right. So next we have Guthrie v. Commissioner and Counselor appearing by video. We have Mr. Brewer and Mr. Langhammer. And Mr. Brewer, if you're ready, please proceed. And did you wish to reserve some time for rebuttal? Yes, two minutes, Your Honor, if I may. Okay, please Good morning, Your Honors. Bruce Brewer. May it please the Court, I represent the appellant Scott Guthrie in this case. And Mr. Guthrie is a younger individual who became disabled in July of 2013, following a very impressive and stellar work record at Transcript 237, disability arising from the combined effects of his impairments. I think the impairment that is most noteworthy, of course, is his spinal impairment that led to a permanent foot drop, which is an indication that medically his exiting nerve root was compressed for so long that he lost motor function in his foot. Given the limited scope of oral argument and the amount of time we have, I would like to start with reference to Transcript 71 to establish overall context. There is sometimes the Commissioner promulgates this notion that total debilitation is necessary to the vocational expert in this case, indicating that any individual who is off task 20% or an individual in an unskilled occupation who would miss work 16 hours per month, would be disabled would be unable to sustain competitive employment. This is totally consistent, as I note in the Social Security ruling 96 AP. This is very, very relevant, because as you see in my briefs, the main issue here is the ALJ's treatment of the claimant's testimony and the ALJ painted with a very broad brush in violation of Brown-Hunter, essentially loathing the claimant. I understand your argument. I read the ALJ's decision and your brief and Brown-Hunter. Isn't it possible to sort of go through the ALJ's decision and figure out what testimony he's concerned about that's inconsistent with the record evidence? Your Honor, I think that that would involve a great deal of speculation as Brown-Hunter points out, you know, courts don't comb the administrative record to generate conflicts not identified by the ALJ. And in this case, the ALJ did, as I argued in the briefs, precisely what the ALJ did in Brown-Hunter, which was simply to paraphrase three elements of the claimant's testimony having to do with treatment symptoms and limitations. So we have essentially, in respect to the credibility issue, it does appear that this case is on all fours with Brown-Hunter. The ALJ must not just paraphrase, but specify the specific testimony that's being rejected, linking evidence to the rejected testimony in order to produce a clear and convincing reason for rejecting that testimony. You'll see in this decision, Your Honor, that the ALJ did nothing of the sort, simply addressed in the language, the plain language of the ALJ. I thought the ALJ tried to do something with respect to his social activities, in his daily activities. Right? Well, He mentioned his attempt to go to attend a college class or a course. I guess it was a local college. Right? Yes, the ALJ did provide a litany by title of daily activities. The ALJ, Your Honor, I submit that you will not find in the ALJ's decision any link between the stated activities and any given limitation. And as my activity undermines which part of the claimant's testimony, Let me just take that statement that you just made and consider the college classes. What should the, how should the ALJ approach that issue in light of what we said in Brown v. Hunter? To comply with Brown v. Hunter? Well, we could change the, I mean, I think to some extent, Your Honor, I need to change the facts of the question. If the claimant, for example, claimed that he wasn't going to college, then evidence of his college attendance, So, but we know that he was, he said, he testified that he went twice a week. Well, driven to the school twice a week. Right. So to answer your question, I would point to the main disabling feature of the claimant's testimony, which was in the average eight hour period, the need because of very profound spinal impairment in this case, Your Honor, this isn't bulging discs or a little bit of degenerative disc disease. This, this case involves very, very profound spinal impairment. And as a result of that, he professed the need to be recumbent on average between three and five hours out of the average eight hour period. Now, as I point out in the briefs, college full time, the ALJ never elicited testimony regarding how much time was being spent in the classroom, but a full time classroom schedule in college is 15 units, which is 15 hours a week. This is this is insubstantial relative to the fact that if he could work 90% of the monthly, but no more than 90% of the monthly workdays, you know, in an average month, he would be disabled. He's assuming for these purposes, he's in class 15 hours a week. This in no way, as I point out in the briefs, conflicts with his his testimony about his need for recumbency, because of the amount of time. What about all of his statements in the records about his improvement? He claims disability since 2013. He had surgery in 2016, as I recall, and then made multiple statements to his physicians about tremendous improvement, doing well, feeling good pain at a three out of 10, as opposed to an eight out of 10 before. And his statements that he what you call the talisman of his disability that he has to be reclined for hours every day. The ALJ found that wasn't consistent with his statements to his physicians that he was greatly improved following surgery. So how do we conclude that's not supported by substantial evidence? Well, Your Honor, I think that what the ALJ did is maybe with all due respect, maybe a little bit slightly different when than what you just described, the ALJ referenced improvement. And clearly from the surgery, there was improvement. The ALJ did not link that improvement to any specific testimony, the ALJ simply, I mean, the effect of the ALJ decision is to say, well, he's improved to some specified amount. Therefore, I don't believe anything he's saying. That's literally the effect. The thing about improvement, however, is that the rejection of credibility across the board, which, by the way, by the way, is a violation of Social Security Ruling 163P. But the improvement begs the question, well, what about the residual symptoms that persisted notwithstanding the improvement? And what we have here is a clear indication at transcript 113, even as indicated by the government's doctor that these very profound symptoms persisted notwithstanding the improvement. So the ALJ did not perform that function at all. So you're down to about 30 seconds. Did you want to reserve time? Yes, Your Honor. Thank you very much. All right. Mr. Langhamer, Langhamer, probably not saying that. That's correct. Yeah, you got you got it right. You got it right, Judge Beatty. Thank you, Your Honors. Good morning. Good morning, Mr. Brewer. I would like to start off by addressing one of the one of the last arguments that Mr. Guthrie made this morning, which is that the ALJ, I believe he said, didn't believe anything that the claimant was saying. And that is that's just not accurate. If we look at the I think it's important to take a step back and realize that the ALJ assigned very significant limitations to the claimant's residual functional capacity. So this is not a case where the ALJ looked at the record and said, I don't believe anything. I don't believe that the claimant had no pain. That's not this case. The ALJ limited Guthrie to a very narrow range of sedentary work, found that he needed to have a cane when walking, found that he had to change positions every hour and included various postural limitations in the RFC. So the ALJ afforded those limitations to Mr. Guthrie. But at the same time, the ALJ was tasked with looking at the claimant's subjective complaints and comparing those complaints to the overall record, including the medical evidence, the activities of daily living. And when the ALJ did so, the ALJ found discrepancies. So with respect to this argument about not complying with Brown-Hunter, Judge Paez, I think you hit the nail on the head when you said when you pointed out that there is there is analysis here that we can follow. In Molina, this court cited Supreme Court precedent stating that the court must affirm the ALJ's findings as long as the agency's path can reasonably be discerned. And we have that here. In Brown-Hunter, the problem was, according to this court, that the ALJ simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC. So there were no reasons in Brown-Hunter that this court could discern. Whereas in contrast, in this case, the ALJ included specific topic sentences and conclusions to frame the specific records that undermined Guthrie's symptoms. But it's still really not clear what testimony she's rejecting. Right before, if we look at the ALJ's decision on page... One second. Okay, what page of the ALJ's decision? On page 19, the ALJ... I've got the ALJ's decision here. I've got five of 14. Are you talking about the excerpts of record? I'm sorry, I'm talking about the actual ALJ. I'm talking about the transcript itself. Oh, the transcript. Yes, it would be six. It would be page six of the ALJ's actual decision. Okay, I got it. Page 19. Okay. So we see the ALJ right here, middle of the page, summarizing what Guthrie alleged, including this allegation that Guthrie repeatedly makes that he has to lie down for hours out of the day. So right here, we have the ALJ acknowledging this testimony, saying, according to the claimant, he spent between three and five hours per day reclining because of lower back pain. You know, he spent 30 to 45 minutes all week. That's for the entirety of the week, doing chores, cooking. And, you know, he's arguing, you know, that he didn't have the ability to concentrate. That's, you know, the first sentence there. The claimant testified he was unable to work because of concentration problems. Then we have this bridge, which is the ALJ's sort of lead up to the subjective complaints analysis, which is after careful consideration, I find the claimant's impairments were not entirely consistent with the medical evidence. Now, had the ALJ stopped right there, I agree this would be a different case. We would not, you know, we wouldn't have the analysis. This would look like a Brown Hunter kind of case. But the ALJ did not stop there. The ALJ goes right into the next sentence and says the claimant's statements, you know, what the ALJ just reviewed, are inconsistent with his daily activities. And then the ALJ lists activities. You know, the ALJ's referenced how he had problems saying he can't work because of concentration problems. But then right there, the ALJ says, but he took college classes during the relevant period to get a business accounting degree. You know, the ALJ referenced up above that, you know, he spent 30 to 45 minutes all week doing chores. You know, that's a matter of minutes a day. But yet the ALJ then cites the evidence where he told a doctor that he was caring for his activities of daily living independently. So there's tension there between somebody who's saying that they really can't do any activities at most 45 minutes the entire week with testimony to a doctor saying, well, I can do my activities actually independently. And, you know, there's also beyond that, you know, the ALJ then goes into the medical records and as Judge Beatty pointed out. You know, you said the topic sentences. He just says, despite his impairments, the claimant took college classes for a business accounting degree. So what is the ALJ inferring from that, that he is able to sit upright for, I don't know, 50 minutes? Do we know how long the class was? I don't think, Your Honor, there's not necessarily, I agree with Mr. Guthrie. I don't think we have a lot of evidence about, you know, the extent of time he's spending on the college courses. But right above that sentence, he does say that the claimant's statements about the intensity, persistence and limiting effects of his symptoms are inconsistent with his daily activities. So there's your topic sentence. And when we see what the ALJ summarized above, which was that he claimed that he couldn't work because of problems concentrating. And when we look at the actual testimony, he actually said that he experienced eight out of 10 pain levels. This was at the hearing that he experienced eight out of 10 pain levels on between four and seven days a week, which is which is a pretty extreme allegation that on certain weeks, he just he linked it to his concentration problems that he couldn't concentrate. And the ALJ cited as one of many examples that while he's taking college courses, so there's some tension here between his allegations that, you know, there are certain weeks where he just cannot concentrate. And yet he is still taking courses. But there is more than just. Yeah, no, I understand that. But I just find this. So the next sentence is this evidence is in. Well, he says he testified he prepared simple meals, shopped for groceries and socialized at his parents' house. Then the ALJ says this evidence is inconsistent with the claimant's allegations that he was precluded from all work activity due to his pain symptoms and demonstrates that the claimant is capable of performing work related activities consistent with the residual functional capacity. But I don't understand that statement. Why does that mean that he's precluded from all work activity? What is it about what he was doing that shows that he's capable of doing an active job? It doesn't link up for me. Yeah. And your honor, I think you make a good point. I think of that, you know, there's two ways that that activities can undermine a case. And one one is if the activities are showing that the claimants got transferable skills or work skills from those activities that transfer to the workplace. You know, I see the ALJ citing that there. I agree with your honor that it's not totally clear how, you know, activities like, you know, shopping and socializing at parents' house would necessarily, you know, prove conclusively that the claimant can work. But, you know, above that, that lead in topic sentence there does say that, you know, his statements actually are inconsistent with these activities. And I think that's the more pertinent, at least with respect to activities. I do want to just touch briefly. I see I have about a minute left. I do want to just touch briefly on, you know, the medical evidence that the ALJ went through. You know, Mr. Guthrie has argued this morning that, you know, this is a Brown-Hunter case. We can't figure out what the ALJ is doing here. You know, again, you know, the ALJ did include topic sentences and conclusions in the medical evidence summary as well. So, for example, on page 20 of the transcript, the ALJ states, you know, the record establishes the existence of a spine disorder and morbid obesity, but does not contain findings that support the degree of limitation alleged by the claimant. The ALJ also notes on page 21 significantly, quote, the medical evidence record demonstrates improved symptoms and functioning. So, Judge Beatty, as you pointed out, you know, this allegation that he has to lie down for, you know, hours a day has these extreme pain levels between four and seven days a week is inconsistent with his reports to doctors that, you know, shortly after his alleged onset date, you know, he's reporting that medication is helping him. He gets surgery in 2016 that he reports further improvement. So, at the end of the day, you know, the ALJ looked at all of this evidence and made a reasonable determination that while Guthrie certainly had significant limitations, he was not as restricted as he alleged. If the court has no further questions, the commissioner respectfully requests that the court affirm the ALJ's decision. Thank you, Mr. Lankheimer. Mr. Brewer, we'll put a minute on the clock for a rebuttal. Oh, Your Honor, I'm sorry. I thought I had reserved two minutes. Well, you went to nine minutes and 30 seconds, so you didn't save two minutes, but I'm giving you an extra 30 seconds. I'll give you a minute. I appreciate that. I think in respect to the, so what, to some extent, counsel did here is the same thing counsel did in his brief. He filled in the gaps. You know, he kind of rewrites the ALJ's decision. The connections that counsel made aren't here. I don't think you'll find in the ALJ's decision that, oh, I'm rejecting his concentration allegations because he went to college. I think that's something that counsel did, does in his brief for the first time, the violation of the Chenery Doctrine. And, you know, the testimony in respect to concentration wasn't that, you know, he had to vegetate in a dark room because he could concentrate on nothing. It was more along the lines that during flare-ups, he had difficulties concentrating. The statements, the topic statements that counsel read to seek to satisfy the requirements of Brown-Hunter reference statements. They reference allegations, these broad descriptors. And in fact, one would have to go back to, and this is the function that at this level, due to the Chenery Doctrine, the courts don't engage in. And one would have to go back to the paraphrased version and try to connect the dots and say, OK, well, this was testimony about this topic. And this is how this was paraphrased. And maybe the ALJ meant this, but there's a certain amount of speculation involved there. And it's very clear from the decision itself. And I challenged counsel in my brief, and counsel apparently was not able to point to a single instance in the ALJ's decision where specific testimony was undermined by evidence that was linked to it. I think I'm out of time. So, Your Honors, the appellant seeks the reversal of the commissioner's decision and a remand for rehearing in accordance with the applicable authorities. Thank you very much for your time today. Right. Thank you. Thank you both, counsel, for your arguments this morning and the cases taken under submission.
judges: PAEZ, BADE, Collins